The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Judge Mott, you can proceed. Thank you very much. We would like to hear argument in No. 18-2438, Addax Energy SA v. M.V.A. Yasa H. Mulla. Counsel? Mr. Power? Yes, Your Honor. Thank you. This is James Power, counsel for Yasa Mulla. As we set forth in our briefs, we believe there are five areas in which the district judge erred. In particular, I will go through the following. Several of the issues, which if found in favor of appellants, would move to remaining issues. So I will focus on the ones that are 100% dispositive, which is 100% dispositive of the case. First and foremost, we believe that the district court lacked administrative jurisdiction to issue a warrant of arrest against the vessel, as the claims brought by Addax were not maritime claims, but were merely claims arising from a breach of a settlement agreement, which does not confer maritime jurisdiction or federal subject matter jurisdiction of the court. The second issue is, we believe, that the district court erred in granting a U.S. maritime lien pursuant to the U.S. Maritime Lien Act. Thirdly, and another dispositive issue, is that Addax did not have standing to bring the claim where the very invoices in which it issued to the purchaser of the fuel stated that it assigned the rights to the receivables. Mr. Power, this is Judge Agee. Let me stop you at the standing point. Obviously, if Addax does not have standing, there isn't much more that we could do now. But I noticed in your briefs that between the opening and reply, you spent only three pages combined with regard to the standing argument, which would seem to me to be the absolute threshold for our determination of the case. Could you tell us in a little more detail exactly why Addax does not have standing? And if they don't, what we should do about it? Yes, Your Honor. In terms of the standing, the invoice itself, Addax has the burden of proving that it has standing. In the very document that Addax attached to its complaint, namely the invoice, it expressly states on there that the right to collect the receivables has been assigned. The reason we didn't go through in further detail in our papers is that there isn't much more to say about it. We think it's simple. On its face, their own documents have established that they have assigned the right to collect the receivables. And according to the case law that we cited, that when you assign the right to collect those receivables, you no longer have a right to pursue a maritime lien because the lien and the debt are intertwined at that point. Mr. Fowler. Excuse me. Who's going first? You go ahead, please. All right. This is Judge Agee again. If you look at the invoice and then the 30b-6 witness's testimony, I can't determine exactly what the degree of assignment is, which I would think would be relevant to the determination of standing. If a party's made a complete assignment so that they've basically and unequivocally given up all their rights with respect to a particular object, then normally the assignor would not have standing to sue an obligor. But if the assignment is only in part, then it's an open question as to whether the assignor has retained sufficient rights to continue to have standing. So when I look at the invoice and the 30b-6 testimony, I can't tell what the degree of assignment is. So maybe you can give us some further delineation of that. But if we don't know whether or not ADAX has assigned all of its rights so that it extinguishes its standing, wouldn't we have to send this back to the district court to make that determination in the first instance? Yes, Your Honor. If the court felt that it was unable to determine on its face with the express language of the invoice to what degree an assignment was made, I think we made the point that the invoice itself to us certainly seems pretty clear. They've assigned the receivables. That is the express statement on the invoice included in the only exhibit. When we sought the deposition of the 30b-6 witness, that witness certainly was not capable, again, was not capable of offering any further testimony as to whether or not it was something less than a full assignment. Excuse me, Mr. Power, this is Judge Keenan. Isn't it really more the testimony, though, of the 30b-6 witness that it's not clear whether there was an assignment at all? The 30b-6 witness said you just couldn't speak to it. Essentially, this is something they put on their invoices. But that doesn't mean that there wasn't, in fact, an assignment. And let me ask you to also address, when you answer my question, the distinction between a real party and interest in standing. Is this really an issue of standing or rather a question under the federal rules of whether addicts is the party which has the right to bring this lawsuit? In other words, are they the real party in interest? I mean, the court clearly has admiralty jurisdiction. The question is who is the real party in interest, isn't it? Whether it's addicts or if there has been an assignment, the S&E. Yeah, well, again, I think if they've assigned the right to collect the debt, in other words, they no longer own that right, then they no longer are the proper party with standing to assert a maritime lien. We did touch on this in our briefing because there's been recent cases, including the cases that we've cited, is that typically when these fuel supplies are financed by third parties, when a third party finances the fuel supply, they want all the rights and remedies immediately assigned so that they can go pursue if the payment isn't made. So usually in the terms, and again, those documents were not produced, but in the terms of these agreements with the seller or someone like addicts, it is not atypical to have assigned the rights over just as in the case that we cited before the court in our brief. Mr. Powers, Judge Agee, again, I don't want to belabor this to the exclusion of all your other arguments, but when I look at the invoice, it just says this invoice has been assigned in accordance with our legal and contractual obligations. Well, we don't have any idea what those legal and contractual obligations are and the extent to which it constitutes an assignment, which the 30B6 witness confirmed. So in that circumstance, while certainly ADAC has the burden, if we are unable to determine whether or not they're standing here, don't we have to get to the bottom of that by sending it back to the district court to make that determination on the record? Yes, I think you would. However, I do think that the 30B6 witnesses' inability to disclaim or to make a contrary statement that the receivables were not assigned as stated in the invoice precludes really any further analysis into the issue. I mean, that was the point of the 30B6. If the 30B6 did not know and couldn't provide counter information and evidence against the plain language of the invoice, then we think that there really needs to be no further analysis, that it simply should be found that there was no standing based on the document itself and the statement that the receivables had been assigned. That answers my question. I don't want to belabor this so that Mr. Carr can move on. Okay, thank you. I'm sorry, just one more question about this, Judge Moss. So your argument is that the other side can't enforce the maritime lien because they assertively have no standing, right? Yes, that is correct. They expressly stated that they've assigned the right to the receivables. Yeah, I know. Okay. But ADEX suffered an injury in fact when it provided the vessel with fuel. It did not receive full compensation, right? Well, Your Honor, I don't know whether they've suffered an injury in fact because it became irrelevant once the settlement agreement was made. No, no, no, leave aside the settlement agreement for a minute. We're just talking about, now we're talking about their ability to show an injury in fact. So this is prior to the settlement agreement. They didn't get paid for the fuel, right? Yeah, well, Your Honor, again, if they assigned the receivables, they weren't supposed to be paid. I mean, in other words, they might have been collecting it, but they were collecting it on behalf of someone else. So then they did not incur any injury. That injury was to a third party who was the only one that would have standing. Okay, Mr. Power, there... Go ahead. I'm sorry, Judge Knox. Go ahead, please. No, you go ahead. Okay, Mr. Power, see, I'm worried about you characterizing this as standing and bringing it into the jurisdictional realm. It seems to me that it is a real party and interest question under Federal Rule of Civil Procedure 17 and that the vessel, as Judge Mott says... Excuse me, the plaintiff, addicts, as Judge Mott says, can say, we provided the fuel, we didn't get paid. And then you come back and say, no, no, even though you provided the fuel, you're not the real party and interest in this case. And it would then be your burden to establish that addicts is not the real party and interest as opposed to trying to call this an issue of standing and tag addicts with the responsibility of showing that they didn't assign it. It seems to me there's a serious burden of proof issue in terms of whether you call this standing or real party and interest. And I'd really like to have you address that distinction. Sure. Yes, Your Honor. And I would agree with you, but for the fact that addicts itself has presented to the court what I would say is now burden shifting is they've represented themselves that the receivables have been assigned. This isn't a case where the contract is silent. If that were the case, I would agree. I would have the burden. But here, the information itself presented to the court in the first instance by addicts using their own document says the receivables have been assigned. So the burden remains on them because of that fact. Now, you know, had they not done that, I would agree with you, Your Honor. Okay. Thank you. My countdown clock is two minutes. Should I continue to focus on this issue or should I move to the issue of the settlement agreement? Talk about whatever issue you wish to talk about. Okay. Yes. The next issue which would move all other issues is whether the court has subject matter jurisdiction. We believe the case law is clear, on point, and we've referenced it in our briefs, that once the settlement agreement was executed between the parties, which covers the debt, and the express language of the settlement agreement itself, which is joint appendix 138 to 141, refers to the subject matter as the debt, which is the amount that was owed under the supply agreement. So the settlement agreement also expressly states in clause 13 that it supersedes and extinguishes all previous agreements. The agreement is governed by Swiss law. There is no reference to maritime liens or preserving liens. So therefore, we believe the case law is clear, and it must be that once the settlement was executed, consideration paid, and performance being made, that there is no longer a right by addicts or anyone else who left the vessel on an alleged breach of the original supply agreement. Okay, Mr. Power, my concern with that, and this is Judge Keene again, my concern with that argument is really twofold. You've got a problem with the lien arising by operation of law, and you have the vessel not being a party to the settlement agreement. So why would we require addicts to expressly reserve its right to a statutory lien against the vessel in an agreement with another party when the lien arises separately by operation of law? Well, Your Honor, that's a good question, particularly because it's a fiction in terms of when we say, in this particular case, that the lien is arising by operation of law. The only reason that addicts is even able to assert a lien under U.S. law is because the supply contract itself, even though it's covered by English law, says that maritime lien shall be interpreted by the law of the United States. Under the Queen of Le Mans case, if that single clause was in there, there would be no question that addicts would never have been able to even assert a maritime lien against this vessel while it was in U.S. wars. So because of that unique contract form that addicts included in its supply contract, the terms of the contract itself are the only enabler that allows addicts to have a lien, as there is no other connection to the United States but for the clause stating that the liens arise under the supply agreement are governed by U.S. law. So addicts chose to use the supply contract to allow itself to assert a maritime lien. We were not a party to that contract either, yet the vessel was subject to those provisions. As such, we certainly should be able to rely upon any defenses that are available pursuant to us based upon the subsequent settlement agreement. So we cannot be held to the terms and conditions, including the U.S. lien clause, in the supply contract, but then not be able to rely upon a later subsequent contract which replaced the supply agreement, which is the settlement agreement. My timer is telling me my time is done. Would you like me to proceed, or can I proceed to continue, or shall we take it forward? Well, let me ask my colleagues if they have any questions. No, thank you. No further at this time. Thank you. Why don't we listen to what your colleague on the other side has to say. Good morning, Your Honors. This is Lauren Wilgus on behalf of the appellee addicts energy assay. May it please the court. Before I address the appellant's arguments concerning the party in interest and the settlement agreement, I would first just like to take a step back and just talk about this action generally. The action below was commenced by a fuel supplier, addicts energy, seeking recovery of payment for its provision of bunker fuel to appellant's vessel. It's undisputed that addicts supplied the vessel with the fuel bunkers on the order of the vessel's time charter, Winrose Shipping. It's also undisputed that Winrose had legal authority from the vessel's owner to order the bunkers. Addicts thereafter issued an invoice to Winrose, and Winrose ultimately made two small payments. Under the law, at the time addicts supplied the fuel to the vessel, two claims arose. Addicts had an in rem maritime lien claim against the vessel itself by operation of law, and addicts had an in personam claim against the charter under the contract. Due to Winrose's nonpayment for the full amount of the fuel bunkers, addicts pursued its in rem maritime lien claim against the vessel for the remaining amount due. To pursue its in rem maritime lien claim, addicts arrested the vessel in the Eastern District of Virginia. By agreement, the vessel was released from arrest by the deposit of cash security into the court's registry. Now, YASA does not dispute that addicts' provision of fuel to the ship meets the requirements for maritime lien under the Maritime Lien Act, or will see. Instead, YASA argues that a separate settlement agreement between addicts and the vessel's charterer extinguished any right addicts had to foreclose its maritime lien against the vessel, which undisputedly received and consumed the fuel and was not paid. The district court rejected YASA's position concerning the applicability of the settlement agreement to addicts' in rem claim, finding that the settlement agreement does not govern addicts' ability to pursue a maritime lien by operation of law, and addicts' attempt to secure relief by contract with Winrose does not foreclose its distinct right to relief through an in rem claim against the vessel. The district court correctly concluded that the nonpayment for the fuel resulted in an enforceable maritime lien and in rem liability against the vessel as a matter of law. Addicts has a valid maritime lien against the vessel within the meaning of the federal Maritime Lien Act. Under the law, when a maritime lien attaches, a supplier of necessaries, which addicts is in this case, may pursue both an in rem action against the vessel and an in personam action against any party who is directly liable under the contract. Fourth Circuit authority on this point is here. This is Judge Agee. I have a question there. So do we know on this record whether with this assignment, whether or not an assignment was made, whether it was limited to the contract receivables or whether it included all rights and interests including the maritime lien? Because when I look at the discussion by Mr. Robert, the 30 v. 6 witness, it's kind of hard to tell. Your Honor, you're talking about the real party and interest issue here, and plaintiff, the notation you're talking about is in an invoice. It's just a standard clause. Mr. Robert testified that it's just a standard clause that's inserted in addicts' invoices. There's no evidence to support the proposition that addicts assigned its claim here. The evidence actually shows that addicts was the one that pursued the collection of the debt with Winrose. So again, just by the actions of the parties, it's clear that addicts, in fact, was pursuing the debt here. Counsel, if I can interrupt you there, the fact that addicts may have that gives it standing. The district court's own finding was that the record was not clear as to whether the plaintiff had assigned its rights, and then it determined that the plaintiff had legal standing because it had pursued these claims against the ship. But it may have not had standing or been a party in interest at any point along the way, depending on what, in fact, it assigned. Because if it assigned not only its rights under the contract, but also its maritime lien or all rights and interests that it may have had, how could it pursue the action? Your Honor, the burden was on YASA to show that addicts did, in fact, assign its rights here. And, in fact, there was no evidence to show that it actually did. Again, the maritime lien arises under operation of law, not under the contract. So if you just take the contract away completely, addicts supplied the vessel with fuel, the fuel was used by the vessel, and addicts have a maritime lien under the law. Again, there's no evidence. Couldn't it have assigned the maritime lien? There is no evidence that it was assigned here, Your Honor. Well, I understand that there isn't, which creates one of the problems I think that's created here. But what I'm asking you is, would ADEX have the right to assign its maritime lien? I suppose, yes, ADEX could have. But, again, there's no evidence that it did. Okay, Ms. Wilber, this is Judge Keenan. Let me ask you a question. To what extent are you relying on the Swiss bankruptcy proceedings and the settlement agreement? Because in the settlement agreement, addicts and WINROS reached the disposition, and presumably if addicts wasn't the real party of an interest, WINROS wouldn't have entered into any agreement. To what extent are you relying on that? I haven't heard you talk about that. Well, again, Your Honor, as I said ---- Or do you think that point is relevant? I don't think the point is relevant to addicts' in rem maritime lien under the law against the vessel. To the extent ---- Is it relevant? Excuse me, I don't mean to cut across you. Is it relevant to the issue of whether, in fact, there was an assignment, whether addicts had assigned its claim? I think it's hard on the phone. I apologize. No, no, my problem, too. I apologize, too. You go ahead. I think the settlement agreement itself is entirely irrelevant to the claim here. To the extent it is relevant, it is relevant to show the actions of the parties. As I said, addicts pursued recovery of the amounts due from WINROS. It wasn't somebody else. It wasn't addicts didn't say we're doing this on behalf of some other party that we assigned our rights to. None of that has been established in any of the e-mails, any of the documents, any testimony in this case at all. What, again, it shows is that the evidence actually shows that addicts pursued its right to collect the debt with WINROS. It did so in negotiations. It did so with the settlement agreement, et cetera. There's no evidence whatsoever that any other party came in here and said, wait a minute, this is actually my right to pursue recovery of this amount due. So to the extent the settlement agreement is relevant at all, again, it just shows that addicts, in fact, was the one who was pursuing the debt here. Okay. Thank you. With respect to the settlement agreement, again, as I stated, the addicts as in REM claim against the vessel does not arise under the supply agreement or the settlement agreement with WINROS, but by operation of the law. Thus, whether the settlement agreement preserved addicts' right to a maritime lien is legally irrelevant here. Contrary to YASA's misrepresentation, the plain language of the settlement agreement contains an absolute reservation of addicts' rights under the supply agreement under both Clause 3.2 and 4.1 of the settlement agreement. Your Honors, with respect to the extent appellants are going to discuss any assignment of any rights to collect the lien from the Cargill assignment, which may come up. Again, the settlement agreement between addicts and WINROS is wholly irrelevant to the in REM claim here. Even if the settlement agreement was relevant, appellant's argument concerning the Cargill assignment fails because there's no evidence whatsoever that addicts acted in bad faith or in a manner otherwise inconsistent with its expressed rights under the settlement agreement. The agreement actually reserved addicts' sole right to determine the validity of the Cargill claim. And addicts' witness, Mr. Robert, testified that shortly after executing the settlement agreement, addicts sought information concerning the Cargill assignment from WINROS was insecure about that assignment because WINROS did not provide all of the information that addicts were seeking. And addicts exercised its right under the settlement agreement and determined that WINROS failed to provide satisfactory information regarding the claim. And addicts did not, in fact, accept that assignment. So, and finally, to the last point, to the extent appellant's argument potentially regarding any sort of double payment issue may arise, that was resolved. Addicts executed an assignment of a debt against WINROS in the Swiss bankruptcy and actually signed Yafit's right title and interest to any debt owed by WINROS. We checked with our client concerning the status of the Swiss bankruptcy proceeding and understand that nothing has actually moved forward with that as of August when I checked with them. Hey, Ms. Wilkos, since you're winding up, could you clarify for us what is your position with regard to the assignment language on the invoice? Did addicts assign its right to collect the invoice? Are you saying it did not assign it or that the record does not prove whether it assigned its right? In other words, are you taking a categorical stand that addicts did not assign its right? Or are you simply saying the record doesn't show that? Your Honor, the record, the evidence in the record does not show that addicts assigned its right. As I said, the record does in fact show that addicts itself pursued collection of the debt through negotiations with WINROS and also it pursued its rights against the vessel here. There's no evidence in the record whatsoever that addicts or any assigned its rights at all. And in fact, no third party has come in at all and said, you know, wait a minute, this is actually our right to collect this debt. We produced thousands of pages of documents, which included email correspondence and contracts, et cetera. And again, the 30B6 witness. And again, there's no evidence whatsoever that any, anybody except addicts had a right to pursue its debt, the debt here. And so, again, there's no, there's no evidence. Hi, this is Judge Motz. I'm not clear on what your answer was to Judge Keenan. Are you saying your client didn't assign it or that they, the other side has to prove that you assigned it and they haven't on this record? Your honor, I'm saying that this, this issue concerns whether addicts is the real party and interest in this case. The burden is on, was on YASA to show addicts was not the party, the real party to pursue with the claim here addicts. I'm sorry. YASA did not meet its burden because there's no evidence in the record that, um, addicts assigned its right under the, uh, the fuel import. Okay. So when the district court found as a fact that it was unclear whether your client addicts had assigned the lien, you think that's of no consequence, that that doesn't have to be determined. Is that correct? Your honor, I'm, I'm saying that there is no evidence that anybody except for addicts is the real party and interest in this case. Well, you and I both know what the district court said. It said that as a factual matter, it was unclear whether addicts had assigned the lien, but it said addicts assigned that, that issue is not material to addicts is right to enforce the lien. Yes. Is that your position? Yes, your honor. And go ahead. No, go ahead. Uh, along this line is,  this is judge ages. I understand, um, the opposing counsel's brief. They represent, you tell me if this is incorrect. They represent that. They requested the district court to order the production of the assignment documents. Assuming there were some, and the district court denied that motion for tardiness. Is that correct? Your honor. Um, yes. Yeah. So argue the district court did not afford it an opportunity to, um, to brief the issue concerning the, the party and interest standing issue. Um, yet, you know, yes, the shipping actually was given ample opportunity to raise the issue during discovery. It did not, uh, it could have sought information in its discovery request. It did not. Um, it should, it could have sought to compel information concerning this particular issue. Uh, it did not do that. So pardon me for interrupting, but my understanding, which may be incorrect was that the opposing counsel is represented that it did request this information with respect to an assignment, which would seem to answer the questions we have today. And that that request was denied. Is that factually correct? Um, yes, it was given an opportunity to raise the issue and it's up opposition to addicts and summary judgment motion. Um, the district court considered the request and rejected, uh, rejected the, uh, the request. So this is indeed a question of standing. However, that interplays with a real party and interest isn't the court obligated to assure itself that it has the subject matter jurisdiction required for standing. Yes, your Honor. Um, I believe that the court did in fact satisfy itself, but it, um, there was a plaintiff did have the legal standing to maintain the claim under the maritime lien act. And this is, goes to the fact that the district court has said it wasn't material as to whether there, uh, whether,  addicts assigned the materials, the receivable. Is that right? Yes, your Honor. It suffered an injury. In fact, when it provided the vessel with the fuel, it did not receive full compensation. That's correct. Your Honor under the maritime lien act. Uh, a party providing necessaries to a vessel on order of the owner or person authorized by the owner has a maritime lien on the vessel, um, and may bring a civil action in REM to enforce the lien and, um, is not required to allege or prove that credit was given to the vessel. Um, and this, so that's the standing that they have. That's standing. Yes, your Honor. Okay. Under the law. And so when, um, the other side maintained that you would assign the receivables, what they were doing as judge Keenan said a few minutes ago, I'm just catching on, um, is that they're making an argument that your client is not the real party in interest, right? Because they've now assigned. It seems to be their argument, but again, there's no evidence. A notation on, on a, on an invoice is not evidence that, and the, there was an actual assignment. There's actually no evidence. That's not a question of jurisdiction though, right? Because, okay, that's correct. Your Honor. Do you have anything else you want to tell us? Uh, no, your Honor. If there are no further questions, um, addicts rest and thank you to your honors for your time today. Um, just, I just want to be sure that my colleagues have no further questions. So JJ, no further just Keenan. Nothing. Thanks. Thank you very much. Counsel. Thank you. I think the other side is reserved some time for rebuttal. If you have any rebuttal, we'll be happy to hear it. Yes, your Honor. I do have some time for rebuttal. Um, I would like to make the point that I think the district court, um, despite saying that he couldn't determine one way or the other, whether there was an actual assignment of the right of the maritime lean maritime liens are assignable under us law. Assuming there was a lane that existed at the time the fuel was supplied. It is under the terms of the agreement. We are arguing the express terms of the invoices that, that mean we believe it was assigned because that is typical of the factoring agreement that is in place with these banks that lend money. The banks themselves want to hold the rights to the liens and the rights to collect the debts. That is exactly what was determined in more than 30 cases around the country over the last four years, including the Barclay first and the blue case that when these, uh, when addicts who is the seller finances, the purchase of the fuel immediately upon the supply under the financing agreements, the maritime lien is transferred over, including the right to collect a debt. In other words, the lien follows the debt because the banks want to have that right. So we, if I can interject a quick question, um, this is JJG. Again, the edX could have bifurcated its rights. It could have retained the maritime lien and assign the receivables rights. Couldn't it? No, no, absolutely not. That would allow that. That would create the absurd results that we have detailed in our brief. In other words, you would have addicts go arrest the vessel, collect the full amount of the lien, which is the fuel supply price. And then you would have the bank going and chasing the supplier. I mean, I'm sorry, the purchaser for the other amount, thereby, thereby effectively paying twice the value of fuel from two different parties. This is exactly what the 30 cases in the OW group litigation around the resolve that there is no two claims. The two claims in rem and in personam are intertwined because you cannot go and chase two different parties for one for in rem claim and the in personam for an in personam claim, and then have them take two different people. For example, addicts who claims to hold the lien and the bank who claims the right to collect the debt. So that, that, that is not a possible scenario, which is why I brought the NRM claim and collected. Wouldn't, um, the obligor have an absolute defense that had already paid once. Yeah, I've only paid twice. Remember, well, I don't remember the obligor is, is, is windrows. Windrows would not have paid once it would have been another party that would have paid. So that's exactly the problem here is that when you arrest the vessel claiming that it's totally unrelated to the contract and or in this case, the settlement agreement, that you have an independent in rem claim that you could pursue and collect fully. The, the, the obligor is not the vessel. The obligor is windrows. The vessel is really the subject of an in rem claim. There is no way. Can you consider the vessel an obligor? It is simply by operation of us law. And again, us law only applies here because it was included in a contract to which the vessel owner was not a party. Which again, raises serious questions as to whether us law should apply at all. There were no connections to the supply of fuel in the United States between us entities or us one vessel. But that being said, it is imperative and which is why we, we understood the language of the contracts to clearly mean that the receivables, including the debts and the rights and the, the liens, if any were assigned, that's what it says on the invoice. We take addicts as word for it. Aren't you Mr. Power? Aren't you're also required to take addicts as word and it's agreement in this case that it does not have a right to double. It just seems to me that you're, what you're trying to say is because what the 30 B six witness said was essentially a boiler plate statement without any other evidence. You're trying to transform that into an assignment. When we had no evidence as to who was the S and E, we don't know anything, but we do know that the Swiss bankruptcy proceeding was settled as to addicts and Winrose Winrose agreed to pay a lot of money and suggesting that there wasn't as an assignment. So there's more evidence that there wasn't an assignment, at least circumstantially in this case, than there is that there actually was an assignment. So I'm just troubled that you're, you're telling us what banks usually do in other cases when this record is just really bereft of, of evidence of an assignment other than that one boilerplate statements that the district court didn't find sufficient to carry the day. Well, you are. I mean, that, that, that receivable in the express language, I'm sorry, that invoice in the express language on there is really no different than the contract, you know, which says, well, the receiver, you know, an assignment has been made. I mean, if, if, if the doc, if that document was produced I don't think, you know, the court would say there's no evidence that an assignment has been made. So we have one contractual document, which is the invoice, which says receivables were assigned to somebody else. So I do think there is ample evidence on the record that when you assign a receivable, I, I believe you cannot retain the maritime lien. I do not believe as a matter of law that is possible. So you must infer absolutely must infer by the express language used by addicts itself in its own invoice submitted at the, at the outset of this arrest of action that it has assigned the receivables and along with it under operation of law, the maritime lien because you cannot retain a lien and assign the right to collect the debt. Well, I don't understand how we could just assume that it's, I would assume to me at least it would be your burden of proof. I'm not sure that your argument goes anywhere, but at least you would have to establish it. And there's the court said you hadn't established it. Well, I don't, I think the court said he didn't know one way or the other cause he had that means you haven't established it. How do you translate that as you have established it? Well, I don't, I mean, again, the burden is not on me to prove a negative. The document itself speaks for itself. When you transfer a receivable to another party by operation of law, I don't have to prove it. It is the law requires it that the, that the lien follows the debt 100%. It cannot be otherwise. Otherwise it will lead to the absurd results where two parties are being chased to pay the same debt to two different people, which is the back. Yeah. But Mr. Power, this is judge Keenan. Well, isn't it absurd for us to, to accept the proposition that wind rose would agree to pay addicts 300 and some thousand dollars. If addicts had already assigned that lien to a third party. I mean, that's what your, it seems like your, your argument is still up on the house of cards. If you want us to believe that a wind rose agreed to pay that money, even though addicts had assigned the lien to a third party, why is that a reasonable proposition? Well, your honor, it's exactly the same reason for wind rose believed that when it was paying under the settlement agreement, wind rose had no reason to believe that addicts would go out and arrest the vessel seeking the same debt. In other words, yes, but Mr. Power, if addicts had already assigned it to the third party, why would wind rose be agreeing to sell out 300 and some thousand dollars to someone who wasn't the real party in interest? Well, remember just because you assign a lien and the right to collect the debt, you know, that, that wasn't something that wind rose wind rose was looking to satisfy its obligation to the entity that it entered a contract with. Right. So when those could reasonably believe, but, and again, I don't know if the representations by addicts were truthful. Certainly they represented that the debt was clear and we were not going to pursue anything. And we've released you so long as you pay us the $20,000, we won't take any other action. They took action even before the settlement agreement was breached. So, you know, again, I wasn't there, I didn't negotiate. I think it's, it's pure speculation. And I don't think for this particular case, there should be any great focus in what's going on in the Swiss bankruptcy proceeding or, or, or what wind rose might have believed, um, you know, was the basis for the rights, uh, for it to enter into a settlement agreement with, uh, with addicts, addicts, addicts may very well have represented. It has the authority to enter into a settlement agreement to clear the debt and extinguish the lien. And, and again, it seems clear that that's probably what they did represent because we rose agreed to enter into a settlement agreement and begin paying money when the vessel was arrested prior to the breach of the settlement agreement. Right. And immediately after the $20,000, I think what we see here is, is that addicts has acknowledged that the settlement agreement is absolutely governing over the, over whether or not there's a maritime lien because they reduced their maritime lien claim by the 20,000 paid under the settlement. So, you know, again, I really think that the settlement agreement is the penultimate contract, which the court, uh, should look to and all the rights that are available to addicts, uh, to the extent they weren't already assigned should be, uh, purely governed by the settlement agreement. Okay. Let me just follow up on one aspect of my earlier question, Mr. Power, the assignment language was on an invoice that was issued to wind rose. So wind rose knew when it was settling and agreeing to pay 300 and some thousand that this assignment purportedly had been made. And you're saying that wind rose was agreeing to pay 300 and some thousand dollars, not withstanding the fact that the invoice that was the subject of the addicts wind rose dispute, Claire had this language saying that an assignment has been made. Yeah. Because I think, I think of course the addicts had the apparent authority to make a settlement under this, whether it was on behalf of itself or someone else, it's irrelevant. The addicts have the apparent authority, just like addicts state that the charter, not the vessel owner had a parent authority to buy the vessel. It's no different. You know, there are people that represent themselves to have authority to settle a debt, right? So addicts could simply be the agent on behalf of the person that had assigned the receivables and the lien to exercise the right to enter into a settlement. We don't know that either. Yeah. So I'm going to sell out 300 and some thousand dollars because, Hey, this plaintiff might actually might actually be the real party in interest could be despite that assignment language. That, that just seems to be a very impractical. Well, again, I think it didn't matter at the time. And it makes sense that it wouldn't matter to wind rose. If wind rose were entering into a settlement agreement, okay. Such that such that that settlement of the agreement would buy, not only addicts, but any entity in which addicts had authority to active agents who had the right to collect the lien or the debt that again, it wouldn't matter. Um, there's no one suggesting that addicts didn't have a parent authority to settle a debt. It's in fact, it, it itself was owed the debt or that debt was owed by the very party that it assigned the receivables to. Um, so I don't think, I don't think it, I wouldn't read anything into the fact that wind rose thought it was appropriate under the circumstances to settle with the party that it had contracted with, right. It has nothing to do with an acknowledgement, implicit express, or otherwise that we wrote that, that wind rose was admitting that the assignment of a receivable was not made for the maritime lien to someone else. Only that, that gap, that, that, that settlement of the debt precluded any further action to collect the debt or the maritime lien, either by addicts or any other party council. Can you give me a case, which supports your view that an assignment of the receivables automatically assigned the maritime lien you haven't briefed it. So there's nothing in your brief that says that. Yeah. I, well, I think certainly the Barclays and the deep blue case, cause they looked at the language of the assignment. Um, and they said, when you assign the debt, you assign the maritime lien goes with it. So, so we did automatically any assignment of the debt automatically assigned the maritime lien. That's what I'm looking for. Case says that. Well, I mean, I don't, I don't, I think it's just implicit in these cases. I think what I think maritime lien is a peculiar animal. Well, it is a peculiar animal, but what has been universally held by the courts is that they're not two separate claims. You can't pursue the in rem independently from an in personam and collect on both claims, the claims intertwined, but that doesn't necessarily mean that assignment of one, the assignment of the receivables means that you've assigned the other. You can't collect twice to be sure. I, anyway, thank you. I appreciate your answer. Um, my colleagues, do you have any further questions? Okay. I think you've well exceeded the time for your rebuttal. Thank you very much. Both of you. We appreciate your arguments. Thank you. Your honor. We will. I think you're in court and our clerk will get us ready for the next case. Okay. Thank you. Thank you. Your honor. Have a nice day. The court will take a brief break before hearing the next case.
judges: Diana Gribbon Motz, G. Steven Agee, Barbara Milano Keenan